**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DONALD JASON RAYMOND,** )<br>)<br>　　　**Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**PETER ALEXANDER,** )<br>**SUSAN LOGUE,** )<br>**BRENT D. PATTON,** )<br>**MARILYN JANE MILLER, and** )<br>**BOARD OF TRUSTEES OF** )<br>**SOUTHERN ILLINOIS UNIVERSITY,** )<br>)<br>　　　**Defendants.** ) | **Case No.  11-cv-00532-MJR** |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

> Plaintiff Donald Jason Raymond was effectively terminated as an Assistant Professor at Southern Illinois University School of Law at Carbondale (SIUC) for threatening to hit a fellow professor with a crowbar, and for making disparaging remarks toward co-workers and students, thereby violating the Workplace Violence Policy and the Faculty Code of Ethics.[1] Raymond filed suit on June 17, 2011, pursuant to 42 U.S.C. § 1983, alleging that SIUC and various university officials (in their individual capacities) violated his civil rights (Doc. 9).  The amended complaint also presents related state law claims by invoking the federal courts' supplemental jurisdiction under 28 U.S.C. § 1367.  Defendants Peter Alexander, Susan Logue, Brent D. Patton, Marilyn Jane Miller and the Board of Trustees of Southern Illinois University have now moved to dismiss the amended complaint in its entirety pursuant to Federal Rule of

---

[1] At the time this action was commenced, Raymond's administrative appeal was still pending, so he had not actually been terminated, but was instead on paid administrative leave.

Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted (Doc. 24). Plaintiff has filed a response opposing the motion to dismiss (Doc. 29).

1.  <u>Synopsis of the Facts Alleged in the Complaint</u>

In August 2008, Plaintiff Donald Jason Raymond was hired by Southern Illinois University School of Law as an assistant professor and law librarian for a 12-month term, although the position was characterized as "tenure track."  In early September 2008, a sexual harassment claim was lodged against Raymond by a student library worker.  Although Raymond was questioned about the allegation, he was not given a copy of the complaint.  No disciplinary charge was ever brought against Raymond.  Professor Douglas Lind, Director of the Law Library (Raymond's supervisor), and Dean Peter Alexander assured Professor Raymond that the matter had been resolved.  Raymond believes the student's harassment complaint tainted his future job opportunities.

On June 16, 2009, Marilyn Jane Miller, an assistant in the library, gave Raymond a copy of the student's sexual harassment complaint.  Miller asked that Raymond not reveal from whom he received the document.  She explained that Law Librarian Professor Candle Wester-Mittan had told her that she would get in "big trouble" if she, Miller, ever showed the document to Raymond.

The next morning, June 17, 2009, when Law Library Director Lind entered the library he encountered Miller crying.  Miller told Lind, "[Y]ou might as well fire me now." Miller then reported that she had given Raymond a copy of the sexual harassment complaint. Lind was angry that Miller knew about the complaint and said he was going to report the matter to Dean Alexander.  While Lind was in the Dean's Office, Miller went to Professor Wester-Mittan and reported that Raymond had threatened to bash Wester-Mittan's head with a crowbar.

After discussing the threat with Lind and Wester-Mittan, Dean Alexander spoke to Miller. Miller elaborated that Professor Raymond "frequently" made such threats against Professor Wester-Mittan.  That very day, without questioning Raymond, Dean Alexander, accompanied by police officers, gave Raymond a letter recounting the alleged threat.  Despite his assertion that the threat was a lie, Raymond was directed to vacate his office and he was escorted off campus.

According to the complaint, on or about June 17, 2009—the same day Miller reported the alleged threat—Professor Raymond called the Provost's Office asking how to file a complaint regarding violations of the confidentiality provisions of the university's sexual harassment policy.  He was routed through various individuals and ended up speaking with Provost Logue's assistant, Ms. Biggs.  Raymond told Biggs that he had evidence to show that the Dean had not been honest with him about the sexual harassment allegations that were brought against him.

On June 25, 2009, five charges for termination were lodged against Professor Raymond.  On July 24, 2009, Provost Logue conducted a hearing, despite Raymond's request that she recuse herself based on a conflict of interest stemming from the fact that Raymond had contacted the Provost's Office regarding the privacy policy violation.  Dean Alexander was the sole witness presented by the University.   Raymond alleges that the university withheld documentation, misallocated the burden of proof, and denied him due process in various other ways.  Raymond appealed Provost Logue's adverse ruling and a new hearing was ordered.

On July 28, 2010, a second hearing was conducted before Brent Patton, Director of the SIU Office of Labor and Employee Relations.  Although Raymond was able to confront and cross-examine Miller, he asserts that Miller's testimony was patently and demonstratively false.  In January 2011, Patton issued a report, concluding that Raymond had threatened to kill a

fellow professor with a crowbar, and had made disparaging remarks toward co-workers and students as charged, thereby violating the Workplace Violence Policy and the Faculty Code of Ethics.  Patton recommended that Raymond be immediately discharged.  On January 12, 2011, Gary Minish, Provost and Vice Chancellor, approved the findings and recommendation that Raymond be terminated.  At the time the amended complaint in this case was filed, Raymond's administrative appeal was still pending, and he remained on paid administrative leave.

On March 30, 2010, Raymond filed a Title VII (42 U.S.C. § 2000e *et seq.*) charge with the EEOC, alleging that SIUC suspended him indefinitely in retaliation for Raymond inquiring about filing a complaint regarding SIUC not following its sexual harassment confidentiality policy.  On July 5, 2011, Raymond was issued a Right to Sue letter.

## 2.   Applicable Legal Standards

In ruling on a Rule 12(b)(6) motion to dismiss, a plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' " and "if they do not, the plaintiff pleads itself out of court." *E.E. O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  In either situation, the Court treats all well-pleaded allegations as true, and draws all reasonable factual inferences in the Plaintiff's favor.   *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

Although at this stage the complaint's factual allegations are accepted as true, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* The plausibility standard calls for a "context-specific" inquiry that requires the Court "to draw on its judicial experience and common sense."

4

*Id.* at 679.  This is "not akin to a 'probability requirement,'" but the plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557.).

3.  Analysis

Defendants move to dismiss all ten counts of the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Each claim will be addressed in turn.[2]

Count I:  Equal Protection

Count I alleges that Defendants Alexander, Logue and Patton treated Raymond less favorably than they treated others, discriminating and retaliating against Raymond based on his gender and his complaint of violations of the university's sexual harassment policy, thereby denying him "equal protection" in violation of the Fourth, Fifth and Fourteenth Amendments.[3]

Defendants argue that the complaint does not provide any facts or allegations that would support a reasonable inference that his gender was a reason for the recommendation to

---

[2] Many counts contain allegations and legal references from other counts of the complaint.  The Court construes and summarizes each count based on the captions and principal arguments presented.

[3] The Equal Protection Clause of the First Amendment is applicable to the states via the Fourteenth Amendment, and applicable to the federal government via the Fifth Amendment, but there is no difference in how the claims are treated.  *See Bolling v. Sharpe,* 347 U.S. 497, 498-499 (1954), and *Ben-Shalom v. Marsh,* 881 F.2d 454, 463 (7th Cir. 1989).  Because there is no federal nexus, the Fifth Amendment is not a proper basis for this claim.  Raymond's citation to the Fourth Amendment is equally confusing.  In *Wren v. United States*, 517 U.S. 806, 813 (1996), the Supreme Court stated that, "the constitutional basis for objecting to intentionally discriminatory application of the laws is the Equal Protection Clause, not the Fourth Amendment."  Plaintiff does not assert any claims regarding his police escort from campus, or any sort of claim that would implicate the Fourth Amendment.

terminate his employment.   Defendants highlight paragraphs 74, 77 and 78 of the amended

complaint, which do not mention gender:

> 74.  Defendants Alexander, Logue and Patton treated Prof. Raymond less favorably than they treated other faculty similarly situated to Prof. Raymond, discriminating and retaliating against him by removing Prof. Raymond from his tenure-track faculty position, and sustaining such removal, due to his gender, and to his complaints of violations of the SIUC Sexual Harassment Policy.

> 77.  On best information and belief, during times relevant hereto, no other Law School faculty complained of violations of the SIUC Sexual Harassment Policy.

> 78.  On best information and belief, SIUC renewed the contracts of all other Law School faculty during times relevant hereto.

Citing *Swearingen-El v. Cook County Sheriff's Dept.*, 416 F.Supp.2d 612, 617 (N.D.Ill. 2006),

and *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005), Plaintiff Raymond counters that he is not

required to "show" anything, or specifically identify similarly situated individuals in his

complaint.  Of course, *Swearingen-El* is not a controlling precedent, and both *Swearingen-El* and

*Brown*, were decided before *Twombly* and *Iqbal*.

> The Equal Protection Clause of the Fourteenth Amendment most typically reaches state action that treats a person poorly because of the person's race or other suspect classification, such as sex, national origin, religion, political affiliation, among others, or because the person has exercised a "fundamental right," or because the person is a member of a group that is the target of irrational government discrimination. The Supreme Court has also recognized the prospect of a so-called "class-of-one" equal protection claim. A class-of-one claim need not allege discrimination based on a suspect classification, but must allege that the plaintiff was singled out arbitrarily, without rational basis, for unfair treatment.

*Abcarian v. McDonald*, 617 F.3d 931, 938 (7th Cir. 2010) (internal citations omitted).

Count I is a bald assertion, unconnected in any way to the factual scenario laid out in the amended complaint.  There is no basis in the amended complaint from which to infer that gender had anything to do with anything that happened to Professor Raymond.

Raymond may be attempting to assert a "class-of-one" claim, alleging that he was intentionally singled out, and that there was no rational basis for treating him differently than those who did not complain of violations of the university's sexual harassment policy.  However, in *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591 (2008), the Supreme Court held that class-of-one protection is not available in the public employment context, absent a class-based decision.  This is because employment decisions, "by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments." *Id*. at 603.  The Court has already concluded that Raymond has failed to state a class-based claim of gender discrimination, so any class-of-one claim is simply doomed.

Lastly, the right to be free from retaliation may not be vindicated under the Equal Protection Clause, which does not establish a general right to be free from retaliation. *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *Grossbaum v. Indianapolis-Marion County Bldg. Auth.,* 100 F.3d 1287, 1296 n. 8 (7th Cir.1996).

For these reasons, Count I fails to state a claim upon which relief can be granted and shall be dismissed with prejudice.

<u>Counts II-IV:  Due Process</u>

Count II-IV present due process claims, each pertaining to a different stage in the termination process:

> Count II alleges that Defendant Alexander denied Raymond due process by depriving him of his right to a personal conference and opportunity to discuss the allegations, to have the charges presented to the

7

Vice Chancellor before they were presented to him, and a pre-deprivation hearing before being suspended.

Count III alleges that Defendant Logue deprived Raymond of due process in the July 24, 2009, hearing by basing her decision on hearsay, considering evidence beyond the charges, making credibility determinations about absent witnesses, and misallocating the burden of proof.

Count IV alleges that Defendant Patton deprived Raymond of due process in connection with the August 23, 2010, hearing by failing to make findings of fact and conclusions of law sufficient to support his decision, relying on Miller's false testimony, reaching a blanket conclusion that termination was warranted, and unreasonably delaying issuance of his decision for five months.

Defendants correctly observe that the three claims, Counts II-IV, should be viewed together, rather than individually. *Zinermon v. Burch*, 494 U.S. 113, 125-128 (1990), makes clear that, to determine whether a procedural due process violation has occurred, courts must consult the entire panoply of pre-deprivation and post-deprivation process provided.

A procedural due process claim requires a two-part analysis: first, the Court must determine whether Plaintiff was deprived of a constitutionally protected interest in life, liberty or property; second, it must determine what process is due. *Pugel v. Board of Trustees of University of Illinois*, 378 F.3d 659, 662 (7th Cir. 2004). The hallmarks of procedural due process are notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306, 313 (1950).

Plaintiff Raymond claims a protected property interest emanating from his employment agreement, as well as from the Employee Handbook, which prescribes disciplinary procedures for the discipline and termination of faculty. Citing *McElearney v. University of Illinois at Chicago Circle Campus*, 612 F.2d 285 (7th Cir. 1979), Defendants contend Plaintiff Raymond does not have a protected property interest because he was employed under a one-year,

renewable contract.   Defendants further argue that general statements in handbooks are insufficient to create a property interest.   Plaintiff Raymond parries that he had a property interest in not being effectively dismissed before the end of his one-year contract, without any demonstration of cause, and without a pre-deprivation hearing.   He elaborates that the university Employee Handbook created a contractual right to specific procedures, including pre-deprivation proceedings in line with *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).   Raymond also contends in his brief that his "interest in his career in the law has been irreparably injured."

"A protected property interest in employment can arise from a statute, regulation, municipal ordinance, or an express or implied contract, such as 'rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Covell v. Menkis*, 595 F.3d 673, 675-676 (7th Cir. 2010) (quoting *Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir. 1996)).

Plaintiff had a one-year contract.[4]   Not every breach of a contract is a violation of a constitutionally protected property right.   "To count as a deprivation of property under the Constitution, a breach of contract must be a breach of a contractual entitlement to property, not a breach of a contractual entitlement to some extra consideration that will result in a job offer only if some other, highly uncertain condition is satisfied." *Yatvin v. Madison Metropolitan School District*, 840 F.2d 412, 417 (7th Cir. 1988).   *McElearney v. University of Illinois at Chicago Circle Campus*, 612 F.2d 285 (7th Cir. 1979), and the more recent decision *Trejo v. Shoben*, 319 F.3d 878 (7th Cir. 2003), make clear that non-tenured professors do not have a property interest

---

[4]  A public employee with tenure rights to employment has a protected property interest. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538-541 (1985).  Plaintiff does not allege that he had tenure.  Rather, Raymond's position was merely tenure-track, with merely the prospect of eventual tenure.

in their fixed-term, tenure-track contracts being renewed.  However, Plaintiff Reynolds takes issue with the early termination of his contract, not the fact that it was not renewed.  The employment contract, providing little more than the term of employment and salary, is attached to the amended complaint (Doc. 9-1pp. 2-3).  It appears that Raymond was removed from his position approximately two months shy of the conclusion of his 12-month contract, which indicates a breach of contract, as well as a constitutionally protected property interest.  *Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 530 (7th Cir. 2000) (four-year contract subject only to removal for cause gave rise to a constitutionally protected property interest).  *See also Head v. Chicago School Reform Board of Trustees*, 225 F.3d 794, 802 (7th Cir. 2000) (recognizing that property interest concluded with the contract).  Nevertheless, to be actionable, some economic loss or identifiable impact on future income or economic benefits is required.  *Bordelon*, 233 F.3d at 530.

Plaintiff Raymond was suspended with pay, so there is no immediate economic impact.  However, an employee's right to pursue his or her chosen occupation can be infringed if he is publicly blacklisted from comparable jobs.  *Trejo*, 319 F.3d at 889; *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001); *Colaizzi v. Walker*, 812 F.2d 304, 307 (7th Cir. 1987).  Raymond specifically alleges that "[h]e has been unable to find comparable work in his field because of SIUC's wild accusations, and the pending termination proceedings" (Doc. 9, p 12 ¶ 71).

> When an individual is terminated from a position "for stated reasons likely to make him all but unemployable in the future, by marking him as one who lost his job because of dishonesty or other job-related moral turpitude," due process must be provided. *Lawson v. Sheriff of Tippecanoe County,* 725 F.2d 1136, 1139 (7th Cir. 1984). A government employee's liberty interests are implicated where in terminating the employee the government "make[s] any charge against him that might seriously damage his standing and associations in the community" or

10

> "impose[s] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Bd. of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
>
> In order to prevail on a liberty interest claim, a plaintiff must show "that (1) he was stigmatized by the defendant's conduct, (2) the stigmatizing information was publically disclosed, and (3) he suffered a tangible loss of other employment opportunities as a result of public disclosure." *Townsend v. Vallas,* 256 F.3d 661, 669-70 (7th Cir. 2001) (citations omitted). A plaintiff must demonstrate that a named defendant was the individual who made the disclosure; a " *res ipsa loquitur [-]like* approach, while perhaps sufficient to establish that someone ... published the information, does not sufficiently establish that the someone was [a named Defendant]." *McMath v. City of Gary,* 976 F.2d 1026, 1031 (7th Cir. 1992) (emphasis in original). Further, the specific stigmatizing statements must be made public; statements made to employees within a department are not considered public dissemination. *Id.* at 1035-36.

*Covell v. Menkis*, 595 F.3d 673, 677 -678 (7th Cir. 2010).  The supposed threat to hit a colleague with a crowbar (characterized by the university as a threat to kill) would seem to suffice as stigmatizing.  The amended complaint contains a general allegation that "SIUC's wild accusations" have affected his job opportunities, and other allegations indicate that Defendants Alexander, Logue and Patton (the defendants named in Counts II-IV) were involved in making and/or publishing the allegation—to what extent remains to be seen.  Plaintiff's problem is that he has not included such a theory of liability in Counts II-IV.  Counts II-IV take issue with the proceedings (or lack of proceedings).  In *Covell*, 595 F.3d at 678, the Seventh Circuit rejected the argument that the due process violation is the failure to provide a name-clearing hearing, rather than the dissemination of the information.

Plaintiff also claims a property interest stemming from the university's Employee Handbook, which prescribes disciplinary procedures for the discipline and termination of faculty. Count II quotes portions of the handbook pertaining to what process "shall" be afforded prior to any formal (i.e., written) disciplinary sanction may be imposed (Doc. 9, p. 16 ¶ 97), and

procedures for termination for cause (Doc. 9, p. 17 ¶ 98).  Counts III and IV claim:  "Pursuant to the Employees Handbook, Prof. Raymond had a contractual right to due process, as well as to enjoy all other rights and benefits appurtenant to the status of a full-time employee in good standing" and "to notice and a meaningful opportunity to be heard and to present any relevant information in response to the charge, prior to formal disciplinary sanction" (Doc. 9, pp. 18-19 ¶¶ 105-106, and p. 21 ¶¶ 117-118).  The problem for Plaintiff is that such procedural protections do not establish a protected property interest.  *Redd v. Nolan*, 663 F.3d 287, 298-299 (7th Cir. 2011) (although procedural protections may be deemed protectable property interests under state law, they do not provide a federally protected property interest).

For these reasons, the Court concludes that no constitutionally protectable property or liberty interest has been pleaded; therefore, Counts II-IV shall be dismissed with prejudice.

<u>Count V:  Retaliation</u>

Count V alleges that, when Defendant Alexander removed Raymond from the university and lodged charges against him (all based on a false accusation), Alexander was retaliating against Raymond for filing, or in order to block the filing, of a complaint with the Provost's Office regarding a violation of the confidentiality provision of the university's sexual harassment policy.  This claim is brought pursuant to 42 U.S.C. § 1983, without specific citation to any constitutional or statutory predicate.   Plaintiff now asserts that he is premising his claim upon both the First Amendment and Title VII (42 U.S.C. § 2000e *et seq*.).  A retaliation claim may be premised upon either the First Amendment or Title VII.  *See Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004).  Plaintiff's assertion to the contrary, a First Amendment retaliation claim and a Title VII retaliation claim are not precisely the same, although the

causation analysis is the same.  *See Mosely v. Board of Education of City of Chicago*, 434 F.3d 527, 533-534 (7th Cir. 2006); *Spiegla v. Hull*, 371 F.3d 928, 943 n. 10 (7th Cir. 2004).  In any event, these distinctions do not appear relevant at this stage in the proceeding.

A First Amendment retaliation claim requires that the plaintiff show: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action."   *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) citing *Bridges v. Gilbert,* 557 F.3d 541, 546 (7th Cir. 2009), *quoting Woodruff v. Mason,* 542 F.3d 545, 551 (7th Cir. 2008)).  Infringement on First Amendment rights occurs when future speech is deterred, and when past speech is punished.  *Kodish v. Oakbrook Terrace Fire Protection District*, 604 F.3d 490, 501 n. 9 (7th Cir. 2010).

A Title VII retaliation claim requires:  (1) a protected activity by the employee; and (2) an adverse employment action.  Anticipatory or preemptive retaliation will suffice as a protected activity, as opposed to the actual undertaking of a protected action.  *Beckel v. Wal-Mart Associates, Inc*., 301 F.3d 621, 624 (7th Cir. 2002).

Defendants, to a certain extent, misconstrue Count V as being premised upon Raymond's making a gender discrimination complaint or other discriminatory conduct.  Defendants observe that Plaintiff cannot state a claim for retaliation for complaining about gender discrimination because there are no allegations of gender discrimination.   Although Defendants are correct on this point (as already addressed relative to Count I), the Court construes Count V as alleging retaliation for Raymond inquiring about filing a complaint with the Provost's Office regarding a violation of the confidentiality provision of the university's sexual harassment policy.

Defendants also highlight that Raymond only alleges that he "inquired of the Office of the Provost, Dr. Susan Logue, as to how to file a complaint" (Doc. 9, p. 23 ¶ 128), and they argue that Raymond "fails to make a complaint regarding discriminatory conduct of any type." That is the sum total of Defendants' attack on Count V. Plaintiff Raymond, perceiving that Defendants are questioning whether he had exercised a constitutional right, argues in far greater depth that initiating the compliant process constituted protected activity. In light of *Kodish* and *Beckel*, and because Plaintiff is not required to argue against himself, the Court is willing to find that Count V states a viable claim under the First Amendment, as well as Title VII.[5]

One crucial aspect of Count V is ignored by all parties. Section 1983 requires personal involvement, and the doctrine of *respondeat superior liability*—vicarious liability—is inapplicable. *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Although there are no allegations that Plaintiff's inquiry about filing a complaint reached Defendant Alexander, the Court cannot foreclose that possibility based on the amended complaint. For example, the relationship between the Office of Provost and the Dean is unclear. This claim appears to be hanging by the thinnest of threads, but is not "threadbare" as *Iqbal* requires for dismissal. Consequently, Count V shall proceed.

<u>Counts VI-IX: Tortious Interference</u>

Counts VI-IX allege that Defendants Alexander, Logue, Patton and Miller tortiously interfered with Raymond's contract and business expectancy stemming from his employment agreement, and policies and procedures in the Employee Handbook and the Sexual Harassment Policy Statement. Defendants argue that these common law claims can only be

---

[5] Title VII is addressed further in connection with Count X.

brought in the Illinois Court of Claims and this Court's jurisdiction is barred by sovereign immunity.  Defendants further contend that these claims are a mash-up of two distinct and contradictory legal theories:  (1) business expectancy; and (2) contract.  Defendants do not delve into the intricacies of contract law, but they contend that if Counts VI-IX are not dismissed based on sovereign immunity, they should be re-pleaded under Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of each claim.[6]

### A.   Theory of Liability

Plaintiff Raymond captions his retort, "Tortious Interference with Contract," yet he refers to a unified claim for "tortious interference with contractual relations and with prospective economic advantage" He also cites *Richmond v. Hahn*, 481 N.E.2d 943, 944 (Ill.App. 3d Dist. 1985), relative to the elements of such a unified claim.  (A review of that case reveals that it pertains to tortious interference with contract.)  Relative to Defendants' sovereign immunity argument, Plaintiff contends that Defendants were acting outside the scope of their state employment, therefore sovereign immunity is inapplicable.

Clearly, Plaintiff does not appreciate the point of Defendants' argument, or the difference between tortious interference with contract and tortious interference with business expectancy, which are two distinct causes of action.

> In order to state a cause of action for tortious interference with contract, it must be alleged that (1) there was a valid, enforceable contract between the plaintiff and another; (2) the defendant was aware of this contractual relationship; (3) the defendant intentionally and unjustifiably induced a breach of contract; (4) a breach of the contract occurred as a result of the defendant's wrongful acts; and (5) damage to the plaintiff.

---

[6] The Court need not address Defendants' argument that supplemental jurisdiction over Counts VI-IX should be declined because  that argument is premised upon the dismissal of *all* other federal claims.

\* \* \*

> A cause of action for tortious interference with a business expectancy requires allegations that (1) plaintiff had a valid business expectancy; (2) defendant had knowledge of the expectancy; (3) the defendant intentionally interfered with the prospective business relationship and prevented its realization; and (4) resultant damage to the plaintiff.

*Ray Dancer, Inc. v. DMC Corp.*, 594 N.E.2d 1344, 1349-1350 (Ill. App. 2nd Dist. 1992) (citations omitted).

The Court agrees with Defendants, these claims must be re-pleaded, so as to distinguish between the two competing theories.  It is up to Plaintiff whether to pursue tortious interference with contract, or tortious interference with business expectancy, or both claims in separate counts.

### B.  Sovereign Immunity

The Eleventh Amendment recognizes that each state is a sovereign entity, and "it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without consent." *Hans v. Louisiana,* 134 U.S. 1, 13 (1890). The Supreme Court has consistently held that unconsenting states are immune from suits brought in federal court by their own citizens, as well as those brought by citizens of other states. *See Ameritech Corp. v. McCann*, 297 F.3d 583, 585 (7th Cir. 2002) (citing *Edelman v. Jordan*, 415 U.S. 651, 662–663 (1974)).  Nonetheless, there are narrow circumstances in which a suit can proceed against a state, its agencies, or officials.  For instance, a state can waive the protections of the Eleventh Amendment and consent to be sued in federal court.  *Ameritech Corp.,* 297 F.3d at 585. Furthermore, a suit for prospective injunctive relief (though not money damages) may proceed against state officials in limited circumstances, as outlined in *Ex Parte Young,* 209 U.S. 124 (1908).  *See also Ameritech,* 297 F.3d at 585.  Finally, as Plaintiff Raymond notes, a suit for money damages may proceed

16

against a state official sued in his individual capacity (as opposed to his official capacity) for wrongful conduct attributable to the official himself, "so long as the relief is sought, not from the state treasury but from the officer personally." *Alden v. Maine,* 527 U.S. 706, 757 (1999).

Determining whether an action against an individual is a suit against the State requires the Court to analyze the issues involved in the case and the requested relief, rather than the mere formal designation of the parties.  *See Fritz v. Johnston,* 807 N.E.2d 461, 466 (Ill. 2004) ("An action brought nominally against a State employee in his individual capacity will be found to be a claim against the State where a judgment for the plaintiff could operate to control the actions of the State or subject it to liability.").  The Seventh Circuit has explained that "[w]here an alleged act of misconduct 'arose out of the State employee's breach of a duty that is imposed on him *solely* by virtue of his State employment, sovereign immunity will bar maintenance of the action' in any court other than the Illinois Court of Claims."  *Turpin v. Koropchak,* 567 F.3d 880, 882 (7th Cir. 2009) (quoting *Turner v. Miller,* 301 F.3d 599, 602 (7th Cir. 2002) (emphasis in original)).

In analyzing whether the claims involved are really attributable to the State rather than State employees in their individual capacities, the Seventh Circuit has considered whether the defendant " 'acted beyond the scope of his authority through the wrongful acts,' and whether 'the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.' " *Id.* (quoting *Healy v. Vaupel,* , 549 N.E.2d 1240, 1247 (Ill. 1990)).

Counts VI-IX are against Defendants Alexander, Logue, Patton and Miller in their individual capacities.  However, Count VIII, relative to Defendant Patton, does not allege that Patton acted outside the scope of his position, nor do such allegations appear in the rest of the amended complaint.  With respect to the others, the amended complaint does specifically assert

17

that Defendants Alexander and Logue and Miller acted outside their respective positions, in furtherance of discriminatory animus, and not in furtherance of SIUC's interests (Doc. 9, p. 28 ¶ 152; p. 30 ¶ 165; p. 36 ¶ 196).   However, examining the context and nature of Patton and Logue's alleged conduct, all of the alleged activities were undertaken within the scope of their duties as Director of Labor and Employee Relations, and Provost, respectively.   Patton allegedly withheld his "perfunctory" decision for five months, and based it upon perjured testimony. Logue allegedly kept Raymond on extended administrative leave prior to ultimate termination. As described in the amended complaint, both of these individuals were acting in their official roles.   Plaintiff has offered nothing more than the possibility they were acting outside the scope of their official roles, which does not satisfy *Iqbal*.   Therefore, the Court finds that Count VII against Logue, and Count VIII against Patton are claims against the State.

Having determined that Logue and Patton are entitled to sovereign immunity with respect to Counts VII and VIII, the Court must determine whether any exception exists.   The Court of Claims Act provides in part that Illinois's Court of Claims "shall have exclusive jurisdiction to hear and determine ... all claims against the State for damages in cases surrounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit, and all like claims sounding in tort against … the  Board of Trustees of Southern Illinois University." 705 ILCS 505/8(d). Obviously, that is the case here.  Furthermore, because injunctive relief is not sought, the narrow exception to sovereign immunity recognized in *Ex parte Young*, 209 U.S. 123 (1908), and *Kashani v. Purdue University*, 813 F.2d 843, 848 (7th Cir. 1987), is inapplicable.

Count VI against Alexander and Count IX against Miller do provide sufficient allegations that Alexander and Miller could have acted for personal reasons, outside the scope of

their respective roles as Dean and library worker.   The amended complaint reflects that Miller may have made up the threats attributed to Plaintiff Raymond, and Dean Alexander may have acted against Raymond in order to prevent Raymond from lodging a complaint regarding Alexander's  handling of the sexual harassment claim against Raymond.   Therefore, Counts VI and IX are not barred by sovereign immunity.[7]

For these reasons, Counts VII and VIII shall be dismissed, without prejudice to Plaintiff's right to seek relief in the Illinois Court of Claims.   Counts VI and IX shall proceed, but Plaintiff must re-plead these claims, properly distinguishing between claims for tortious interference with contract and claims for tortious interference with business expectation.

<u>Count X:  Title VII Retaliation</u>

Count X alleges that SIUC retaliated against Raymond in violation of Title VII (42 U.S.C. § 2000e *et seq*.): first, bringing termination charges against Raymond, because of, among other reasons, the supposedly resolved student sexual harassment; and, second, by lodging termination charges because he inquired about how to file a complaint regarding SIUC failing to follow its own confidentiality policies and Dean Alexander not being "honest" with him about the sexual harassment allegation.

Title VII provides in pertinent part that it is illegal for an employer to discriminate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Defendants argue that Raymond's inquiry about filing  a breach of confidentiality of

---

[7]  Although Miller Count IX is the only claim against Miller, the Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), because it stems from the same controversy as the other claims, and Count IX could be joinder pursuant to Fed.R.Civ.P. 20(a)(2)(B).

the university's policy does not trigger the Act.  Defendants do not otherwise perceive how Section 2000e-3(a) is implicated.

The amended complaint contains allegations that Dean Alexander had denied Plaintiff an opportunity to respond to the student's sexual harassment charge, and had told Plaintiff that the charge had been resolved.  Raymond obtaining the complaint from Miller could be viewed as triggering Alexander's wrath, resulting in the termination charges.   One of the grounds for termination drafted by Alexander references Raymond having threatened and intimidated a Library Assistant (Miller), requesting that she provide him with a copy of the student's complaint, when Raymond had previously been told he would not receive a copy due to its confidential nature (Doc, 9-3, p. 3).  If the sexual harassment charge was not completely resolved, as Plaintiff intimates, of if Alexander had not handled the matter properly, there is a tenuous thread of retaliation that could constitute a Title VII violation.   The thread also runs through to the allegation that, when Plaintiff was inquiring about filing a charge with the Provost's Office, he told one or more employees that one of his complaints was that Dean Alexander "had not been honest with him" about the sexual harassment allegations.   That allegation could also fall within the ambit of Section 2000e-3(a).

At this juncture, the Court cannot rule out that the termination charge was not lodged in retaliation for Raymond's participation ("in any manner") in the investigation of the student's sexual harassment charge.  Therefore, Count X shall proceed.

4.  <u>Conclusion</u>

For the reasons stated, Defendants' motion to dismiss (Doc. 24) is **GRANTED IN PART AND DENIED IN PART**.  Counts I-IV are **DISMISSED with prejudice**.  Count V, alleging a Section 1983 retaliation claims against Defendant Alexander, shall proceed. Count VI,

alleging tortious interference shall proceed against Defendant Alexander, provided on or before **October 12, 2012**, Plaintiff files a Second Amended Complaint re-pleading this count in accordance with this Order.  Counts VII and VIII are **DISMISSED without prejudice** to these claims being brought in the Illinois Court of Claims.  Count IX, alleging tortious interference shall proceed against Defendant Miller, provided on or before **October 12, 2012**, Plaintiff files a Second Amended Complaint re-pleading this count in accordance with this Order.  Count X, alleging a Title VII retaliation claim against SIUC, shall proceed.

Because all claims against Defendants Susan Logue and Brent D. Patton have been dismissed, Logue and Patton are **DISMISSED** as parties to this case.  The Clerk of Court is **DIRECTED** to terminate Logue and Patton as parties, although final judgment will not enter in their favor until all claims against all parties are resolved.

**IT IS SO ORDERED.**

**DATED:  September 25, 2012**

s/ *Michael J. Reagan*
**MICHAEL J. REAGAN**
**UNITED STATES DISTRICT JUDGE**